JS-6/ "O"

# UNITED  STATES  DISTRICT  COURT

## FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| **ARNALDO PINTO, ET AL.,** ) | **CASE NO. SACV 10-00184 AG (MLGx)** |
| ) | |
| **Plaintiffs,** ) | **ORDER GRANTING DEFENDANTS'** |
| ) | **MOTIONS FOR SUMMARY** |
| **v.** ) | **JUDGMENT** |
| ) | |
| **THE WALT DISNEY COMPANY and** ) | |
| **WALT DISNEY WORLD CO.,** ) | |
| **through its division, DISNEYLAND** ) | |
| **RESORT, ET AL.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

Arnaldo Pinto, Juan C. Guzman, Juan Felix Valenzuela, Fausto C. Torres, Jesus Enriquez Acero, Benjamin Puentes, and Ricardo Rivera (collectively, "Plaintiffs") sued their former employer, Disneyland Resort ("Disney"), for wrongful termination and discrimination, among other things.  Plaintiffs claim Disney fired them because they are Hispanic.  Disney claims Plaintiffs were fired for drinking alcohol while commuting home from work in a Disney-sponsored vanpool.  Plaintiffs also sued their unions, Local Union No. 652 of the Laborers' International Union of North America ("Local 652") and Plumbers and Steamfitters Local 582 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Local 582") for failing to fairly represent them.  Disney, Local 652, and Local 582 (collectively, "Defendants") now bring Motions for Summary Judgment (the "Motions").  After reviewing all papers and arguments submitted, the Court GRANTS Defendants' Motions in full.

## BACKGROUND

This cases arises from Disney's decision to fire Plaintiffs for drinking beer and tequila in a Disney-sponsored vanpool van on their way home from work.  Plaintiffs are former Disney employees who worked under the management of Karen Hedges and others in Disney's Horticulture Department.  (Plaintiffs' First Amended Complaint ("FAC") ¶ 2.; Declaration of Karen Hedges in Support of Disney's Motion for Summary Judgment ("Hedges Decl.") ¶ 5.)  Plaintiffs are Hispanic.  (Disney's Proposed Statement of Uncontroverted Facts ("Disney SUF") ¶¶ 30-31.)  Pinto is of Honduran descent and the other Plaintiffs are of Mexican descent.  (*Id.*)

Pinto is a member of Local 582.  (FAC ¶ 2; Local 582 Proposed Statement of Uncontroverted Facts ("Local 582 SUF") ¶ 3.)  The other six Plaintiffs – Guzman, Valenzuela, Torres, Acero, Puentes, and Rivera – are members of Local 652.  (FAC ¶ 2; Local 652 Proposed Statement of Uncontroverted Facts ("Local 652 SUF") ¶ 3.)

Disney subsidizes a vanpool commuter program (the "Vanpool Program") for its employees.  (SUF ¶ 4.)  Each Plaintiff voluntarily participated in the Vanpool Program and signed Disney's Vanpool Passenger Agreement (the "Agreement"), which required, among other things, that they "refrain at all times while in the Van from the consumption of alcohol." (*Id.* ¶ 6; FAC ¶ 11.)

In August 2009, George Moynier, a Caucasian passenger in Plaintiffs' vanpool van, told Disney management that Plaintiffs sometimes drank alcohol in the van.  (Disney SUF ¶ 8.)  Hedges immediately authorized Disney security personnel to investigate the matter.  (*Id.* ¶ 9.)  During interviews with Disney security personnel, four of the seven Plaintiffs – Acero, Pinto, Puentes, and Rivera – admitted that they drank alcohol in the vanpool van.  (Acero Tr. 89:1-7; Pinto Tr. 117:16-118:6; Puentes Tr. 66:6-9; Rivera Tr. 157:20-25.)  The other three Plaintiffs – Guzman, Torres, and Valenzuela – initially denied, but later admitted, drinking alcohol in the vanpool van.  (Torres Tr. 53:4-10; Guzman 71:16-72:7; Valenzuela Tr. 45:1-5.)  Representatives of Local 582 and Local 652 (the "Unions") were present at the interviews of those Plaintiffs who requested representation.  (Local 582 SUF ¶ 26; Local 652 SUF ¶ 32.)

1    Based on the investigators' findings and other information, Hedges concluded that

2    Plaintiffs violated the Vanpool Passenger Agreement.  (Disney SUF ¶ 21.)  After consulting with

3    two Caucasian members of Disney's Labor Relations Department, Hedges fired Plaintiffs.  (*Id.*

4    ¶¶ 24-25)  Hedges also fired Greg Asher, a Caucasian vanpool passenger, for drinking in the

5    van, and Troy Lauriston, the Caucasian vanpool driver, for failing to report the drinking.  (*Id.* ¶

6    26.)  Hedges did not fire Antonio Gonzalez, a Hispanic vanpool passenger of Mexican descent,

7    because he never drank alcohol in the vanpool van.  (*Id.* ¶¶ 28-30.)  Although Moynier admitted

8    drinking alcohol in the van, Hedges did not fire him.  (*Id.* ¶¶ 32-33.)  Hedges claimed that she

9    did not fire Moynier – who, as noted, reported the drinking – because she did not want to

10   discourage employees from reporting violations in the future.  (Hedges Decl. ¶ 7.)

11   Based on these undisputed facts and others, Plaintiffs asserted eleven claims, numbered as

12   follows:  (1) wrongful termination in violation of public policy; (2) breach of Disney's

13   Collective Bargaining Agreement ("CBA"); (3) breach of the duty of fair representation; (4) race

14   and national origin discrimination; (5) violation of the Family and Medical Leave Act

15   ("FMLA"); (6) violation of the California Family Rights Act ("CFRA"); (7) disability

16   discrimination; (8) violation of California Constitution Article 1 Section 1; (9) invasion of

17   privacy and intrusion into a private matter; (10) rescission and restitution; and (11) declaratory

18   relief.  (FAC.)  Plaintiffs assert claims one, two, and four through eleven against Disney only.

19   Plaintiffs assert claim three against their Unions only.  (*Id.*  ¶¶ 56-74.)

20   Defendants now bring Motions for Summary Judgment.  After reviewing all the

21   arguments and papers submitted, the Court GRANTS Defendants' Motions in full.

22

23   **PRELIMINARY MATTERS**

24

25   Both parties, but especially Defendants, submitted voluminous objections.  Indeed,

26   Plaintiffs submitted 41 objections and Defendants submitted hundreds.  In motions with

27   numerous objections, "it is often unnecessary and impractical for a court to methodically

28   scrutinize each objection and give a full analysis of each argument raised."  *Doe v. Starbucks,*

1   *Inc.*, No. 08-0582, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  This is especially true

2   where, as here, "many of the objections are boilerplate recitations of evidentiary principles or

3   blanket objections without analysis applied to specific items of evidence." *Id.*

4         The Court did not rely on the majority of the evidence under objection.  To the extent it

5   did rely on objected-to evidence, the Court relied only on admissible evidence.  *See F.T.C.*

6   *v.Neovi, Inc.*, 598 F. Supp. 2d 1104, 1118 n.5 (S.D.Cal. 2008) ("The parties have each filed

7   evidentiary objections.  However, in deciding the present motions, the Court has only relied

8   upon admissible evidence.").

9

10   **LEGAL STANDARD**

11

12         Summary judgment is appropriate only where the record, read in the light most favorable

13   to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . .

14   the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex*

15   *Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or

16   defense of a claim, as determined by reference to substantive law.  *Anderson v. Liberty Lobby,*

17   *Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a

18   reasonable jury could return a verdict for the nonmoving party." *Id.*  In deciding a motion for

19   summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable

20   inferences are to be drawn in his favor." *Id.* at 255.

21         The burden initially is on the moving party to demonstrate an absence of a genuine issue

22   of material fact.  *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden,

23   then the non-moving party must produce enough evidence to rebut the moving party's claim and

24   create a genuine issue of material fact.  *Id.* at 322-23.  If the non-moving party meets this burden,

25   then the motion will be denied.  *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099,

26   1103 (9th Cir. 2000).

27

28

1   __ANALYSIS__

2

3       As noted, Plaintiffs bring eleven claims against Defendants.  The Court first considers

4   Plaintiffs' claims against Disney.  The Court then examines Plaintiffs' claim against the Unions.

5

6   **1.      PLAINTIFFS' CLAIM FOR DISCRIMINATION BASED ON RACE AND**

7   **NATIONAL ORIGIN (CLAIM 4)**

8

9       Plaintiffs claim that Disney fired them because of their race and national origin.  (FAC ¶¶

10  1-2, 4-5, 7-36, 75-83.)  A plaintiff may prove discrimination with direct or circumstantial

11  evidence.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Here

12  Plaintiffs rely on circumstantial evidence of discrimination because direct evidence of

13  discrimination is not available.  (Plaintiff's Opposition to Disney's Motion for Summary

14  Judgment ("Opp'n to Disney Motion") at 15:19-22.)  Claims of discrimination based on

15  circumstantial evidence are evaluated under the three-part *McDonnell Douglass* test.  *McDonnell*

16  *Douglas Corp.*, 411 U.S. at 802.

17       To establish a prima facie case of race or national origin discrimination, Plaintiffs must

18  first show that (1) they are members of a protected class; (2) they were competently performing

19  their jobs; (3) they suffered an adverse employment action; and (4) they were treated less

20  favorably than similarly situated Caucasian employees.  *Id.*; *Aragon v. Rep. Silver State*

21  *Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir. 2002).  If Plaintiffs establish a prima facie case of

22  discrimination, the burden shifts to Disney to "articulate some legitimate, non-discriminatory

23  reason" for firing Plaintiffs.  *McDonnell Douglas*, 411 U.S. at 802.  If Defendants succeed in

24  articulating such a reason, the burden shifts back to Plaintiffs to show that Disney's "stated

25  reason for the adverse employment decision was in fact pretext."  *Id.* at 804.

26

27

28

### 1.1      Prima Facie Discrimination

Disney does not dispute that Plaintiffs are members of a protected class, were competently performing their jobs, and suffered an adverse employment action.  Disney argues only that Plaintiffs were not treated less favorably than similarly situated Caucasian employees.  Plaintiffs claim that they were treated less favorably than Moynier, the Caucasian vanpool vanpool passenger who was merely suspended for drinking alcohol in the vanpool van.  (Opp'n to Disney Motion at 16:25-27.)  Disney contends that Moynier was not similarly situated to Plaintiffs because Moynier, unlike Plaintiffs, reported the Vanpool Agreement violations to Disney management.

Moynier's decision to report the violations constitutes precisely the type of "mitigating or distinguishing" circumstance that allows an employer to treat an employee differently.  *Smith v. UPS*, 2006 U.S. Dist. LEXIS 25104, at *16 (N.D. Cal. Mar. 22, 2006) (*quoting Clark v. Runyon*, 218 F.3d 915, 918) (8th Cir. 2000) (a similarly situated employee is one who "engage[s] in the same conduct without any mitigating or distinguishing circumstances")); *see also Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) ("[I]n determining whether summary judgment is appropriate, we may assess independently the question whether [those receiving favorable treatment] are similarly situated to appellants.").

Disney also argues that Greg Asher's discharge proves that Disney treated its employees similarly regardless of race.  (Disney Motion at 8:18-19:4.)  Disney fired Asher, a Caucasian vanpool passenger, for drinking in the van and not reporting the violations.  (Disney SUF ¶ 26.)  Plaintiffs claim that Asher was not similarly situated to Plaintiffs because, in addition to drinking in the van, he "engaged in fraud by fraudulently and deceptively using his vanpool card and swiping it to obtain additional benefits under the vanpool program."  (Opp'n to Disney  Motion at 18:18-21.)  But Plaintiffs do not sufficiently support this claim.  Finally, Plaintiffs fail to square their discrimination claim with the undisputed fact that Antonio Gonzalez, a Hispanic passenger of Mexican descent who never drank alcohol in the vanpool van, was not fired.

1  Plaintiffs do not provide sufficient evidence to rebut Disney's showing that no genuine
2  issue of fact exists regarding its allegedly disparate treatment of similarly situated employees.
3  For that reason, Plaintiffs fail to establish a prima facie case of discrimination on the basis of
4  race or national origin.

5

6  **1.2     Legitimate Nondiscriminatory Reason for Adverse Action**

7

8  Even if Plaintiffs were able to establish a prima facie case, their discrimination claim
9  would fail because Disney articulated a legitimate, nondiscriminatory reason for firing Plaintiffs.
10  *McDonnell Douglas*, 411 U.S. at 802.  Disney claims, and Plaintiffs acknowledge, that Plaintiffs
11  violated the Vanpool Agreement by drinking alcohol in the van while commuting home from
12  work.  (Disney SUF ¶ 17.)   This violation qualifies as a legitimate, nondiscriminatory reason for
13  their firing.  *See Id.*
14  The burden to articulate a valid reason for the adverse employment action is one of
15  "production . . . not persuasion."  *Chuang v. Univ. Calif. Davis, Bd. of Trustees*, 225 F.3d 1115,
16  1123-24 (9th Cir. 2000) (*citing Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254
17  (1981) ("The defendant need not persuade the court that it was actually motivated by the
18  proffered reasons.")).  Disney has satisfied this burden.

19

20  **1.3     Pretext**

21

22  Since Disney can articulate a legitimate, nondiscriminatory reason for firing Plaintiffs, the
23  burden shifts back to Plaintiffs to show that this reason is pretextual.  *McDonnell Douglass*
24  *Corp.*, 411 U.S. at 804.  To defeat summary judgment on this claim, Plaintiffs would have to
25  identify "*specific* and *substantial* evidence" demonstrating that their violation of the Vanpool
26  Program Agreement was mere pretext for intentional discrimination.  *Aragon*, 292 F.3d at 659
27  (emphasis in original).

28

1    Plaintiffs fail to provide such evidence.  Instead, Plaintiffs state that "[i]t can be strongly
2    inferred that discriminatory animus existed based upon certain stereotypes toward alcohol
3    consuming Mexican males."  (Opp'n to Disney Motion at 20:22-24).  This assertion is
4    insufficient to establish pretext, especially with Plaintiffs' admissions that they got along well
5    with Hedges and never heard any discriminatory comments from Disney supervisors or
6    managers.  (Disney Reply to Plaintiffs' Opp'n at 5:1-25.)

7

8    **1.4    Conclusion.**

9

10   Plaintiffs fail to establish a prima facie case of discrimination because they have not
11   shown that they were treated less favorably than similarly situated non-Hispanic employees.
12   And even if Plaintiffs were able to establish a prima facie case of discrimination, they would not
13   be able to demonstrate that Disney's legitimate, nondiscriminatory reason for firing Plaintiffs is
14   mere pretext.  Disney's Motion for Summary Judgment as to Plaintiffs' fourth claim, for
15   discrimination on the basis of race and national origin, is therefore GRANTED.

16

17   **2.    PLAINTIFFS' CLAIM FOR DISABILITY DISCRIMINATION (CLAIM 7)**

18

19   Plaintiffs claim that Disney fired them because they suffer from alcoholism.  (FAC ¶¶ 1-
20   2, 4-5, 7-36, 114-141.)  Alcoholism is a recognized disability under the Americans with
21   Disabilities Act and California's Fair Employment Housing Act ("FEHA").  *See, e.g., Daft v.*
22   *Sierra Pacific Power*, 251 Fed. Appx. 480, 482 (2007); *see also Brown v. Lucky* 246 F.3d 1182,
23   1187 n.1 (2001).  To establish a prima facie case of disability discrimination, Plaintiffs must
24   show that they (1) suffer from a disability; (2) are qualified to perform the functions of their job;
25   and (3) were subjected to an adverse employment action because of their disability.  *Brundage v.*
26   *Hahn*, 57 Cal. App. 4th, 228, 236 (1997).

27   Plaintiffs also argue that Disney failed "to make a reasonable accommodation" for their
28   disability.  (Opp'n to Disney Motion at 21:1-6.)  Plaintiffs specifically claim that Disney violated

FEHA by not permitting them to participate in Disney's drug and alcohol rehabilitation program – the Employee Assistance Program ("EAP") –  as required by California Labor Code § 1025. (*Id.* at 21:13-16.)  Section 125 requires private employers employing more than 25 people to "reasonably accommodate any employee who wishes to voluntarily enter and participate in an alcohol or drug rehabilitation program, provided that this reasonable accommodation does not impose an undue hardship on the employer." *Id.*

Disney argues that Plaintiffs' disability discrimination claim fails for two reasons.  First, Disney contends that Plaintiffs have not presented adequate evidence that they suffer from alcoholism.  The Court agrees.  Plaintiffs offer no medical evidence that they are alcoholics. Nor did Plaintiffs seek treatment for alcoholism after being fired from Disney.  (Disney SUF ¶¶ 42-44).  Moreover, during their depositions, Plaintiffs stated that drinking never interfered with their ability to work.  (*Id.* ¶¶ 43-44.)

Second, Disney argues that Plaintiffs could not have been fired *because of* their purported alcoholism because Disney was not aware that Plaintiffs claimed to be alcoholics at the time of their discharge.  (Disney Motion at 12:21-23.)  *See Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1248 (2008) ("An adverse employment decision cannot be made because of a disability, when the disability is not known to the employer." (internal quotation marks omitted)).  Plaintiffs offer inadequate proof to support their claim that there is a "triable issue of material fact [as to] whether Hedges had knowledge" of Plaintiffs' purported alcoholism. (Opp'n to Disney Motion at 21:23-25.)  Six of the seven Plaintiffs admitted that they never told Disney supervisors that they suffered from alcoholism before their firing.  (Disney SUF ¶ 55.) Although Acero told Disney investigators that he suffered from alcoholism 17 years ago, he did not claim to suffer from it still.  (*Id.* ¶ 53.)  Moreover, none of the Plaintiffs asked to undergo rehabilitation, or to participate in Disney's EAP, until after they were fired.  (*Id.* ¶¶ 56-57.)

Because Plaintiffs own statements refute their claims that they suffer from alcoholism, and because Disney management was unaware of Plaintiffs purported alcoholism when Plaintiffs were fired, Disney's Motion for Summary Judgment as to claim seven, for disability discrimination, is GRANTED.

1
2

**3.   PLAINTIFFS' CLAIMS FOR VIOLATION OF FMLA AND THE CFRA
      (CLAIMS 5 AND 6)**

3

4       Plaintiffs claim that Disney violated their rights under FMLA and CFRA by "fail[ing] to

5   provide reasonable accommodation and to engage in the interactive process for FMLA/CFRA

6   leave."  (FAC ¶ 104.)  Plaintiffs further claim that Disney's "fail[ure] to provide leave and time

7   off" constituted a violation of FMLA and CFRA.  *Id.*  To support this claim, Plaintiff cites

8   California Government Code §12940(m) which requires employers "to make reasonable

9   accommodation for the known physical or mental disability of an applicant or employee."  Cal.

10  Gov. Code §12940(m).

11      This claim fails for the same reason that Plaintiffs' discrimination claim fails.  As noted in

12  Section 2, Plaintiffs provide insufficient evidence that they suffer from alcoholism.  Plaintiffs

13  also fail to prove that they informed Disney of their alleged disability or requested medical leave

14  before their discharge.  *See* Cal. Code. Regs. Tit. 2 § 7237.4(a)(1) ("An employee shall provide

15  at least verbal notice sufficient to make the employer aware that the employee needs CFRA-

16  qualifying leave, and the anticipated timing and duration fo the leave.")  Nor have Plaintiffs

17  presented the Court with any evidence that Disney should have known about their purported

18  disability.

19      Disney's Motion for Summary Judgment as to Plaintiffs' fifth and sixth claims, for

20  violations of FMLA and CFRA, is GRANTED.

21

22  **4.   PLAINTIFFS' CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF

23        PUBLIC POLICY (CLAIM 1)**

24

25      Plaintiffs claim that Disney's rule prohibiting drinking alcohol in the vanpool van

26  "constituted a severe limitation upon their rights, in violation of federal and state open container

27  laws, and therefore trampled upon the privacy rights afforded to them under the Constitution of

28  the State of California and Privileges and Immunities Clause of the U.S. Constitution."  (FAC ¶

24.)  To establish a claim for wrongful termination, an employee must prove that his dismissal

violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in an

administrative regulation, statute, or constitutional provision.  *See Green v. Ralee Eng'g* Co., 19

Cal. 4th 66, 71-72 (Cal. 1998).


### 4.1   "Open Container" Laws


Plaintiffs argue that their termination was wrongful because it resulted from the lawful

exercise of their right to drink alcohol in the vanpool van.  They claim that because California

exempts buses, taxis and limousines from the "open container" prohibitions of the California

Vehicle Code, drinking alcohol in the vanpool van was not a valid basis for termination.  (FAC

¶¶ 11, 22-25.)  The California Vehicle Code generally prohibits open containers of alcohol in

moving vehicles, but provides a limited exception for passengers "in any bus, taxicab, or

limousine for hire licensed to transport passengers pursuant to the Public Utilities Code or proper

local authority . . . ."  Cal. Veh. Code §§ 23221(b), 23229(a).

Plaintiffs' argument fails for three reasons.  First, the vanpool van is a not a "bus, taxicab

or limousine," and therefore does not fall under the exception to California Vehicle Code §

23221(b).  The Code separately defines a "vanpool vehicle" as one designed to carry between

ten and fourteen passengers "used primarily for the nonprofit work-related transportation of

adults for the purposes of ridesharing."  Cal. Veh. Code. § 668.  Second, the vanpool van is not

licensed under the Public Utilities Code or any other known local authority.  Indeed, as Plaintiffs

state, the California Public Utility Code excludes vanpool vehicles from its licensing

requirements.  Cal. Pub. Util. Code § 5353(h).  (Opp'n to Disney Motion at 7:24-27.)  Third, the

vanpool van is not "for hire" in the sense that a bus, taxicab or limousine may be.  It is a service

arranged and subsidized by Disney for the benefit of its employees.

But the lawfulness of drinking alcohol in Disney's vanpool van is beside the point.

Plaintiffs' argument ignores the basic right of private employers to prohibit certain conduct that

the law doesn't.  Here, Disney offers its employees the opportunity to participate in a subsidized

1    rideshare program subject to certain conditions, like refraining from drinking alcohol.  Plaintiffs

2    violated this condition, and lost their jobs as a result.

3

4    **4.2      Disney's Internal Polices and California Labor Code § 1025**

5

6        Plaintiffs contend that their termination was wrongful because it violated Disney's

7    internal drug and alcohol policies.  This argument fails because Disney's internal rules, which

8    are not grounded in constitutional or statutory provisions, cannot serve as the basis for a public

9    policy wrongful termination claim.  *See Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1257

10   (1994) ("wrongful discharge is not a vehicle for enforcement of an employer's internal

11   policies").  The dispute in this case does not support a wrongful termination claim because it

12   does not involve a fundamental matter of public policy.  *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083,

13   1090 (1992) (distinguishing between "claims that genuinely involve matters of public policy,

14   and those that concern merely ordinary disputes between employer and employee.").

15       Plaintiffs also argue that their termination was wrongful because it violated California

16   Labor Code § 1025, which requires certain private employers to "reasonably accommodate" an

17   employee wishing to enter a substance abuse rehabilitation program.  But the policies underlying

18   Section 1025 are not sufficiently "substantial" or "fundamental" to support a claim for wrongful

19   termination.  *Lamke v. Sunstate Equip. Co.*, 387 F. Supp. 2d 1044, 1053 (N.D. Cal 2004) (*citing

20   Sullivan v. Delta Air Lines*, 58 Cal. App. 4th 938, 946-47 (1997) (holding that California Labor

21   Code § 1025 does not support a wrongful discharge claim)).

22

23   **4.3      Constitutional Claims**

24

25       Finally, Plaintiffs argue that Disney wrongfully terminated them in violation of their

26   rights under Article 1 Section 1 of the California Constitution and the "Privilege [sic] and

27   Immunities Clause" of the United States Constitution.  (Opp'n to Disney Motion at 9:14.)  As

28   explained in Section 5, Plaintiffs provide no support for their claim that Disney violated Article

1 Section 1 of the California Constitution.  Plaintiffs' argument concerning the Privileges and

Immunities Clause of the United States Constitution is simply frivolous.


### 4.4     Conclusion


Because Plaintiffs fail to raise any issue of fact concerning their claim for wrongful

termination, Disney's Motion for Summary Judgment as to Plaintiffs' first claim is GRANTED.


## 5.     PLAINTIFFS' COMMON LAW AND CONSTITUTIONAL PRIVACY CLAIMS
## (CLAIMS 8 AND 9)


Plaintiffs argue that Disney invaded their right to privacy under the common law and the

California Constitution.  (FAC ¶¶ 1-2, 4-5, 7-36, 114-126, 142-162; Opp'n to Disney Motion at

viii:13-20.)  To prevail on these claims, Plaintiffs must establish:  (1) a legally protected privacy

interest; (2) a reasonable expectation of privacy in the vanpool van; and (3) conduct by Disney

constituting a serious invasion of privacy.  *Hill v. Nat'l Collegiate Athletic Assoc.*, 7 Cal. 4th 1,

39-40 (1994).

Plaintiffs have no legally protected right to drink alcohol in the vanpool van.  Indeed, as

noted in Section 4.1, such behavior violates the California Vehicle Code.  Nor do Plaintiffs

demonstrate that they had a reasonable expectation of privacy in the vanpool van, which Disney

arranged and subsidized.  Plaintiffs' argument that Disney's enforcement of the vanpool rules

somehow constituted a serious invasion of privacy is similarly groundless.

Disney's Motion for Summary Judgment as to Plaintiffs' eighth and ninth claims is

GRANTED.


.

**6     PLAINTIFFS' CLAIMS FOR RESCISSION, RESTITUTION, AND
       DECLARATORY RELIEF (CLAIMS 10 AND 11)**

       Plaintiffs' claims for rescission, restitution, and declaratory relief are derivative of its
other claims.  Because these other claims fail, Plaintiffs' claims for rescission, restitution, and
declaratory relief fail as well.  Accordingly, Disney's Motion for Summary Judgment as to
Plaintiffs' tenth and eleventh claims is GRANTED.

**7.     PLAINTIFFS' CLAIM FOR BREACH OF COLLECTIVE BARGAINING
       AGREEMENT (CLAIM 2)**

       Plaintiffs claim that Disney violated Section 34(a) of its CBA when it fired Plaintiffs.
Section 34(a) provides that "any employee who voluntarily comes forward and/or admits to the
use of drugs [including alcohol] will not be subject to immediate discipline, but will be referred
to the Company's Employee Assistance Program (EAP) for rehabilitation."  (FAC ¶ 43.)   The
CBA also gives Disney the "right to establish standards of employment and to hire, discharge or
suspend an empoyee for any just cause which it deems sufficient . . . ." (Disney SUF ¶ 63.)

       Plaintiffs argue that Section 34(a) required Disney to refer them to a rehabilitation
program after they admitted drinking alcohol in the vanpool van.  But Disney and the Unions
interpret this section to mean only those employees who voluntarily disclose substance abuse
problems or admit to drug or alcohol use *before* violating company policy or being questioned
about misconduct are entitled to rehabilitation.  (SUF ¶ 70.)  Accepting Plaintiffs interpretation
would mean that no employee could be discplined for substance abuse after admitting infractions
to a company investigator. (SUF ¶ 90).  Consuming alcohol in violation of the Vanpool
Agreement constitutes just cause for termination.

       Disney's Motion for Summary Judgment as to Plaintiffs' second claim, for violation of
the CBA, is GRANTED

## 8.   PLAINTIFFS' CLAIMS FOR BREACH OF DUTY OF FAIR REPRESENTATION AGAINST LOCAL 582 AND LOCAL 652 (CLAIM 3)

Plaintiffs claim that the Unions breached their duty of fair representation by, among other things, refusing to arbitrate Plaintiffs' grievance.  (FAC ¶¶ 1-5, 7-26, 40-74.)  Pinto asserts this claim against Local 582 only.  The other six Plaintiffs – Guzman, Valenzuela, Torres, Acero, Puentes, and Rivera – assert this claim against Local 652 only.

The duty of fair representation "is a judicially established rule imposed on labor organizations because of their status as the exclusive bargaining representative for all of the employees in a given bargaining unit."  *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985).  To determine whether the Unions breached their duty of fair representation to Plaintiffs, the Court first considers "whether the alleged union misconduct involved the union's judgment, or whether it was procedural or ministerial."  *Wellman v. Writers Guild of Am., West, Inc.*, 146 F.3d 666, 671 (9th Cir. 1998) (internal citations and quotation marks omitted).  If the conduct involves the union's exercise of judgment, "the Plaintiff may prevail only if the union's conduct was discriminatory or in bad faith."  *Id.*  If, on the other hand, the conduct is procedural or ministerial, "the Plaintiff may prevail if the union's conduct was *arbitrary*, discriminatory, or in bad faith."  *Id.* (emphasis added).

Plaintiffs claim that the Unions' decision not to arbitrate their grievance constituted a "failure to perform a 'ministerial' act."  (Plaintiffs' Opposition to Local 582 Motion for Summary Judgment at 15:22-23.)  The Unions, on the other hand, argue that this decision was an act of judgment.  The Court need not decide this issue here because Plaintiffs fail to provide evidence demonstrating that the Unions' conduct was discriminatory, in bad faith, or arbitrary.

"To establish that the exercise of judgment was discriminatory, a plaintiff must adduce 'substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives."  *Beck*, 506 F.3d at 880 (*quoting Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)).  As explained in Section 1, Plaintiffs have not provided evidence of intentional discrimination, much less substantial

evidence.  To "establish that the union's exercise of judgment was in bad faith, a plaintiff must show 'substantial evidence of fraud, deceitful action or dishonest conduct.'" *Id.* (*quoting Lockridge*, 403 U.S. at 299).  Plaintiff has provided no evidence that comes close to satisfying this standard.

Courts will not hold "that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a greivance." *Peterson v. Kennedy*, 771 F.3d 1244, 1254 (9th Cir. 1985).  Plaintiffs repeatedly insist that the Unions' actions were wrong, but do not provide evidence to show that the Unions' acted arbitrarily.  Indeed, Plaintiffs admit that the Unions investigated the grievance, pursued the grievance with Disney, and actively debated the merits of the grievance with Plaintiffs.

Plaintiffs allegations that the Unions made bad decisions and did not advocate forcefully enough on their behalf are insufficient to survive a motion for summary judgment.  Accordingly, the Unions' Motions for Summary Judgment as to Plaintiffs' third claim, for breach of the duty of fair representation, are GRANTED.

**DISPOSITION**

The Court has considered Plaintiffs' other arguments and finds them unpersuasive.  Defendants' Motions for Summary Judgment are GRANTED in full.  All Defendants shall now promptly submit a proper proposed judgment based on this Order.

IT IS SO ORDERED.

DATED: September 16, 2011

Andrew J. Guilford
United States District Judge

16